UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Gerald Frank and Charlene Frank,** | **Civil No. 04-2718 (DSD/SRN)** |
| **Plaintiffs,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Household Bank (SB), N.A. and Rainsoft** | |
| **Defendants.** | |

John E. Mack, Esq., on behalf of Plaintiffs

Paul C. Peterson, Esq., on behalf of Defendant Household Bank (SB), N.A.

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter comes before the undersigned United States Magistrate Judge on Defendant Household Bank's Motion to Compel Arbitration or in the Alternative to Dismiss (Doc. 12). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendant Household Bank's motion be granted.

**I.   BACKGROUND**

On November 12, 2002, Plaintiffs Gerald Frank and Charlene Frank (the Franks) purchased a Rainsoft Water Treatment System. (Doc. No. 15 Ex. 1.) The system price was $6,545.00 and the Franks sought to purchase the system on credit. (Id. Ex. 2.) On the day of purchase, the Franks executed three documents: (1) a purchase agreement (Doc. No. 15 Ex. 1); (2) an HRSI revolving

account agreement (HRSI Agreement) (Doc. No. 19 Ex. A); and (3) a Rainsoft Card Program credit agreement (RCP Agreement) (Doc. No. 24 Exs. A-B).

The HRSI Agreement, printed on H&R Marketing, Inc. / Rainsoft letterhead, reads in relevant part as follows:

> H.R.S.I. STATEMENT OF AGREEMENT
>
> I (WE) UNDERSTAND THAT MY (OUR) ACCOUNT WITH H.R.S.I. WILL BE A REVOLVING ACCOUNT.  UNLESS STATED OTHERWISE ON THIS FORM THE INTEREST RATE ON THE ACCOUNT WILL BE 17.99% APR.  THE MINIMUM BALANCE DUE EACH MONTH WILL BE FIGURED AT 2% OF THE ORIGINAL BALANCE.  THE TERM OF THIS REVOLVING ACCOUNT WILL DEPEND SOLELY UPON THE AMOUNT THAT I (WE) PAY EACH MONTH.  THE REVOLVING ACCOUNT WORKS IN THE SAME MANNER AS ANY OTHER CREDIT CARD.  I (WE) AGREE THAT I (WE) HAVE RECEIVED MY (OUR) COPY OF THE H.R.S.I. CARDHOLDER AGREEMENT AND UNDERSTAND ALL OF THE DETAILS AS OUTLINED IN THE AGREEMENT.  I (WE) UNDERSTAND THAT THERE IS NO "FREE TRIAL" PERIOD WITH THIS PURCHASE.  THERE HAVE BEEN NO PROMISES MADE TO ME (US) CONCERNING ANY RETURN POLICY FOR THIS EQUIPMENT.

(Doc. No. 19 Ex. A.)  Below the space allotted for the "customer" and "representative" signatures and date is the following text: "**DO NOT SIGN THIS FORM UNLESS YOU HAVE RECEIVED YOUR COPY OF THE HRSI CARDHOLDER AGREEMENT!**" (Id.)

The RCP Agreement is contained in a fold-out Rainsoft brochure which contains six four inch by nine inch pages printed on both sides. (Doc. No. 24 Exs. A-B) Eight of these pages contain the standard terms of a credit card agreement, some privacy-rights information, and an arbitration clause. (Id. Ex. B.)  The first item of the "cardholder agreement" states:

> Each person signing and submitting . . . the application for a credit card account ("Account") as applicant or joint applicant applies for an Account with Household Bank (S.B.), N.A., a national banking association, and requests one or more credit card(s)

>bearing the name or tradename of Rainsoft to be used in connection with the Account. In this Agreement, the words "you" and "your" refer to the applicant and joint applicant named on the credit card application and the words "we", "us" and "our" refer to Household Bank (SB), N.A., located at 1111 Town Center Drive, Las Vegas, Nevada 89144.

(Id.) In addition, the following statement appears on the RCP Agreement's signature page:

>APPLICANT(S) SIGNATURE REQUIRED BELOW
>
>All of the information furnished on this application is, to the best of your knowledge, complete and accurate. You agree that we may obtain a credit bureau report from whatever source we choose. By completing and signing this application, you request a Card issued to you by us which will allow you to make purchases under this Account. By a) signing, using or permitting others to use this Card; b) signing or permitting others to sign sales slips; c) making or permitting others to make purchases by telephone, Internet, or any other means, you agree to the terms and conditions of this Cardholder Agreement and Disclosure Statement, Form 6022-770-38-US-06 (1-01) (which includes an arbitration provision) stated on both sides of this combined application and Cardholder Agreement and Disclosure Statement, which are incorporated herein by reference. If we do not approve this application, you request and authorize us to provide this application and credit information to other lenders which will treat it as an application for a separate credit product offered by such lender. You grant the other lender the right to request a consumer credit report on you and authorize the other lender to check your credit and employment history. You understand that if approved, 1) the terms of the account from such other lender, including the rate of Finance Charge and repayment terms, would be different from the agreement originally provided to you with this application; 2) no credit insurance will be available from such other lender, even if you have authorized credit insurance coverage on this application; and 3) You will need to sign a credit agreement with the lender if you are approved for this financing and agree to the terms offered. You have read and received a copy of your Agreement before making any purchase under this Account. Terms are attached. If this is a joint credit application, you understand that each applicant has the right to use the Account and that you shall be liable for all purchases made under the Account by any joint applicant. You grant us a purchase money security interest in the goods purchased on your Account.

(Id. Ex. A.) Located immediately below the above text on the application are blank signature spaces for an "applicant," "joint applicant," or "other person" on "whose income the applicant is relying." (Id.) Immediately below the applicant's signature space, the application contains a pre-signed signature of

3

"Chuck Colip, Vice President" signing on behalf of "Household Bank (SB), N.A."  (Id.)

After signing the HRSI and RCP Agreements, the Franks allege that they made a "down payment" to H&R Marketing.  (Doc. No. 28.)  Plaintiffs claim the water system never worked properly (Id.) and on May 31, 2003, the Franks informed Household Bank that they would make no more payments on the account.  (See Doc. No. 15 Ex. 4; Doc. No. 28.)

On April 26, 2004, the Franks served their Complaint in this matter on Household Bank and Rainsoft in state court.  (See Doc. No. 1.)  On May 18, 2004, Household Bank removed the matter to federal court.  (Id.)  For their Complaint, the Franks allege claims of fraud, breach of warranties, and breach of contract against Rainsoft.  (Id.)  Franks also allege that Household Bank is a debt collecting agency that violated provisions of the Fair Debt Collection Practices Act (FDCPA), codified at 15 U.S.C. § 1692 (2000).  (Id.)  On September 10, 2004, Household Bank filed the motion now before the Court, a Motion to Compel Arbitration or in the Alternative to Dismiss (Doc. 12).  The motion was heard by this Court on November 1, 2004.  (See Doc. No. 22.)  The parties were given additional time to file post-hearing briefs and the Court took the matter under consideration on November 10, 2004.  (Id.)

## II.  PARTIES' POSITIONS

Household Bank moves this Court to compel the Franks to submit their dispute with Household Bank to arbitration.  (Doc. No. 12.)  Household Bank argues that its relationship to the Franks is governed exclusively by the RCP Agreement and that agreement requires the dispute alleged by the Franks to be submitted to arbitration.  (Doc. No. 14 at 1-13.)  In the alternative, Household Bank moves this Court to dismiss the Franks' dispute with Household Bank pursuant to Federal Rule of Civil

4

Procedure 12(b)(6).  (Id. at 13-15.)  In support of this alternative position, Household Bank argues that it is the original grantor of credit to the Franks.  (Id. at 14-15.)  Because a creditor seeking collection of its own accounts is not a "debt collector" under the FDCPA, Household Bank argues that it cannot be in violation of the FDCPA and, thus, dismissal is warranted.  (Id.)

While Plaintiffs concede they signed the RCP Agreement, they argue that the credit application process contains two steps and only one of these steps was ever completed.  (Doc. No. 29.)  They argue the first step is the execution of the RCP Agreement and the second step is a separate credit agreement with the lender, in this case Household Bank.  (Id.)  In support of their two-step argument, they cite a clause of the RCP agreement which states: "3) You will need to sign a credit agreement with the lender if you are approved for this financing and agree to the terms offered."  (Id.)  Because no agreement was ever executed pursuant to the above clause, Plaintiffs argue no valid contract exists between them and Household Bank.  (Id.)  Therefore, Plaintiffs contend that Household Bank has no basis for seeking arbitration.  (Id.)

Household Bank responds that the third clause Plaintiffs cite which calls for a separate credit agreement, is contingent upon the occurrence of events that did not take place here.  (Doc. No. 23 at 2-4.)  These events are described, according to Household Bank, in a clause in the RCP Agreement which precedes the one Plaintiffs cite.  (Id.)  It reads: "If we do not approve this application, you request and authorize us to provide this application and credit information to other lenders which will treat it as an application for a separate credit product by such lender."  (Id. at 2 (citing Doc. No. 24 Ex. A.))  Household Bank argues that since it approved Plaintiffs' original application, Household Bank never sent their credit information to another lender and, consequently, no subsequent credit application

5

was necessary. (Id. at 3-4.) As a result, Household claims, the RCP Agreement is complete, binds the Franks to its terms, and therefore, the Court should enforce the arbitration clause therein. (Id.)

Plaintiffs also argue that, on the same day they signed the RCP, they first signed the HRSI Agreement which states that their "account with H.R.S.I. will be a Revolving account" and that by signing the agreement they agreed that they "received [their] copy of the H.R.S.I. Cardholder agreement." (Doc. No. 20 at 2-3; Doc. No. 28.) Plaintiffs argue that H.R.S.I. is the parent entity of Rainsoft. (Doc. No. 20 at 2.) Given their position that they have no contract with Household Bank, Plaintiffs argue that the HRSI Agreement is the only valid agreement and it is with Rainsoft, not Household Bank. (Id. at 3-5.) Therefore, according to Plaintiffs, Household Bank is a debt collector for Rainsoft and subject to the provisions of the FDCPA. (Id. at 5-6.)

Household Bank did not address the HRSI Agreement in its briefing to the Court or at the motion hearing.

## III.   DISCUSSION

### A.   Legal Standard

Congress enacted the FAA to establish a "national policy favoring arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). Accordingly, there exists a strong federal presumption in favor of arbitration. See e.g., Volt Info. Sci. v. Bd. of Trs., 489 U.S. 468, 475 (1989). But a party cannot be compelled to arbitrate in the absence of a contractual obligation to do so. See In re Talbott Big Foot, Inc., 887 F.2d 611, 614 (5th Cir. 1989); Genesco, Inc. v. Kakiuchi & Co., 815 F.2d 840, 847 (2d Cir. 1987).

"A court's role under the FAA is therefore limited to determining (1) whether a valid agreement

to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004) (citing Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001)).  The FAA describes the criteria for a valid arbitration clause as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2000).  The FAA guides the Court's review of the clause's scope as follows:

> If any suit . . . brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000).  Any doubts about the scope of the arbitration clause are resolved in favor of arbitration.  AT&T Techs., Inc. v. Communication Workers of Am., 475 U.S. 643, 650 (1986).

    **B.**    **Court's Recommendation**

At the motion hearing, Plaintiffs conceded that, if the RCP Agreement represents a valid contract between the parties, then the claims in their Complaint fall within that contract's arbitration clause.  Therefore, the only issue for the Court to decide is whether a valid agreement to arbitrate exists.  See Pro Tech Indus., 377 F.3d at 871.

First, the Franks argue that "[t]he only 'link' between the Franks and Household is the tenuous word 'Household Bank (S.B.) N.A.[') over the signature of a Chuck Cold (sic) who did not sign the document." (Doc. No. 29.) The Court disagrees and finds that the RCP Agreement is between the Franks and Household Bank. The terms of the RCP Agreement are clear and unambiguous. The RCP Agreement defines the words "you" and "your" as meaning the applicant and the words "we" "us" and "our" as meaning "Household Bank (SB), N.A., located at 1111 Town Center Drive, Las Vegas, Nevada 89144." (Doc. No. 24 Ex. B.) Further, the RCP Agreeement execution page clearly lists only two parties: (1) the applicants and (2) "Household Bank (SB), N.A." (Id. Ex. A.) The pre-printed signature of Household Bank's Vice-President, Chuck Colip is clearly listed as an authorized representative of the bank. (Id. A, C.) The above evidence is sufficient to show that the credit agreement is between the Franks and Household Bank. The presence of the separate HRSI Agreement does not alter the fact the RCP Agreement is a complete agreement between Household and the Franks.

Second, the Franks argue that clause three of the execution page text requires an additional, separate agreement be entered into between Household Bank and the Franks before the RCP Agreement arbitration provisions are applicable to the present dispute. A review of the context of clause three, however, belies this position. Clause three follows text which discusses <u>what would have happened</u> had Household Bank rejected the Franks' application. (See id.) Household Bank would have had the right to forward the Franks' application to another lender. Had that other lender approved the Franks' application, clause one provides that the terms of the credit agreement could be different from those in the RCP Agreement. (See id.) Clause two provides that any credit insurance

8

coverage with Household Bank's application would not cover a different agreement with another lender. (See id.) And finally, clause three provides that the Franks would have to sign a separate credit agreement with that other lender. (See id.) In other words, all of the clauses, including the third, would have applied only if Household Bank had rejected the Franks' application. Since Household Bank approved the Franks' application, none of the clauses, including the third, apply. Therefore, the Court finds that no additional agreement is required and that the RCP Agreement is a complete credit agreement between the Franks and Household Bank.

Because the Franks concede that all of their claims against Household Bank are within the scope of the arbitration clause in the RCP Agreement, the Court recommends compelling arbitration and staying these proceedings pending the outcome of arbitration.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Defendant Household Bank (SB), N.A.'s Motion to Compel Arbitration (Doc. 12) be **GRANTED** and that proceedings in this matter be stayed pending the outcome of arbitration.

Dated: March 15, 2005

    s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by March 31, 2005, a writing which specifically identifies those

9

portions of this Report to which objections are made and the basis of those objections. Any party wishing to oppose such objections must file and serve all parties with its response. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.